DECISION AND JOURNAL ENTRY
Appellant, Mr. Sidney D. Lawrence, appeals from the judgment of the Lorain County Court of Common Pleas, convicting him of rape and gross sexual imposition. We affirm.
 I.
On July 30, 1996, the Lorain County Grand Jury indicted Mr. Lawrence on one count of rape, in violation of R.C.2907.02(A)(1)(b), one count of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). All these crimes were alleged to have been committed by Mr. Lawrence between August 1, 1995 and April 19, 1996, upon his daughter, Selina Lawrence. Selina was three years old when these crimes were alleged to have occurred.
On August 14, 1996, the trial court found that Mr. Lawrence was indigent and appointed an attorney for him at the state's expense. Mr. Lawrence's attorney waived all statutory time requirements for a speedy trial, on September 10, 1996. On January 13, 1998, Mr. Lawrence moved for dismissal based on his right to a speedy trial. The following day, the trial court denied Mr. Lawrence's motion for dismissal and Mr. Lawrence signed a waiver of his right to a speedy trial. Mr. Lawrence then filed, on January 23, 1998, a motion for the state to provide funds for him to retain a medical expert so as to further prepare his defense. The state opposed his motion. The trial court denied his motion on February 3, 1998.
A two-day jury trial was held on February 12 and 13, 1998. During the trial, testimonies of Kelly Bare, Selina's babysitter, and Kelly Bryant, Selina's mother, were admitted over Mr. Lawrence's objection. Each testimony concerned Selina's statements to them regarding Mr. Lawrence's conduct with her and was objected to as hearsay. The jury returned a verdict that was journalized on February 18, 1998. The jury found Mr. Lawrence guilty of rape and gross sexual imposition but not guilty of felonious sexual penetration. The trial court sentenced Mr. Lawrence accordingly. This appeal followed.
 II.
Appellant asserts five assignments of error. We will address each in due course.
 A.
First Assignment of Error
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED THE APPELLANT'S MOTION FOR DISMISSAL.
Mr. Lawrence asserts that the trial court erred when it failed to grant his motion to dismiss. He based his motion on the delay of his trial. He asserts that the delay violated his right to a speedy trial under the Ohio Constitution and U.S. Constitution. Furthermore, he argues that the waiver of his speedy trial right by his attorney was not valid. We disagree.
"It has been recognized by this court that R.C. 2945.71 and2945.73 implement the constitutional guarantee of a speedy trial (Section 10, Article I, Ohio Constitution), and must be complied with by the state." State v. McBreen (1978), 54 Ohio St.2d 315,317. R.C. 2945.71(C)(2) requires that a person charged with a felony "be brought to trial within two hundred seventy days after his arrest." However, "[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent."[1] McBreen, 54 Ohio St.2d at the syllabus.
Through his attorney, Mr. Lawrence waived his right to a speedy trial on September 10, 1996. Although the record does not explicitly indicate the purpose of the waiver, it can be inferred from the record that it was to facilitate trial preparation. First, Mr. Lawrence personally signed an additional waiver of his right to a speedy trial on January 14, 1998, after moving for dismissal. Mr. Lawrence signed this additional waiver in order to allow his attorney more time to prepare for trial, as discovery was incomplete and Mr. Lawrence had not yet filed his motion for expenses to hire an expert. Furthermore, Mr. Lawrence was not in any manner prejudiced by the delay, as he was not prepared to go to trial and needed additional time to prepare his case. Hence, as more time was required for trial preparation in January 1998, some fifteen months after Mr. Lawrence's attorney signed the original waiver, it is apparent that Mr. Lawrence's attorney signed the initial waiver to facilitate trial preparation. See State v. Grell (Nov. 19, 1997), Lorain App. No. 96CA006544, unreported, at 3-4. Moreover, Mr. Lawrence does not allege that his attorney failed to advise him of the waiver of his right to a speedy trial or its implications, or that he disagreed with his attorney's decision when it was made. We therefore conclude that Mr. Lawrence waived his right to a speedy trial. Mr. Lawrence's first assignment of error is overruled.
 B.
Second Assignment of Error
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT THE APPELLANT'S REQUEST FOR FUNDS TO RETAIN A MEDICAL EXPERT.
Mr. Lawrence argues that the trial court erred in failing to grant his request for funds to hire a medical expert to examine the physical evidence the prosecution presented at trial. He argues that, due to his lack of funds, he was unable to hire a medical expert and was prejudiced thereby at trial. We disagree.
Due process, as guaranteed by the Fifth and Fourteenth
Amendments to the United States Constitution and Section 16,
 Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a [sic] sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial.
State v. Mason (1998), 82 Ohio St.3d 144, syllabus, approving and following State v. Broom (1988), 40 Ohio St.3d 277. Abuse of discretion is not a mere error of judgment, rather it is "perversity of will, passion, prejudice, partiality, or moral delinquency." State ex rel. Shafer v. Ohio Turnpike Comm. (1953),159 Ohio St. 581, 590-91.
The trial court did not abuse its discretion by refusing Mr. Lawrence's request for a state paid expert. Mr. Lawrence did not establish either that there was a reasonable probability that the requested expert would aid his defense or that his lack of an expert would result in an unfair trial. Mr. Lawrence does not allege what a medical expert could have testified concerning or have discovered. Moreover, the state did not call any witnesses solely as experts in a field — all were fact witnesses first and foremost. Furthermore, as Mr. Lawrence concedes that Selina was abused and none of the state's witnesses who are medical professionals proffered an opinion as to who committed these acts upon Selina, it is not at all clear what a medical expert hired by Mr. Lawrence could have offered or added to his defense. We conclude that Mr. Lawrence received a fair trial even without the opportunity to hire his own expert. The case turned on whom the jury believed, Selina or Mr. Lawrence, not whether the abuse occurred, because Mr. Lawrence admitted that fact. Hence, we conclude that the trial court did not abuse its discretion by denying Mr. Lawrence's motion for funds for a medical expert. Mr. Lawrence's second assignment of error is overruled.
 C.
Fifth Assignment of Error
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT RULED THAT STATEMENTS MADE BY SELINA TO HER MOTHER AND BABYSITTER WERE ADMISSIBLE UNDER THE HEARSAY EXCEPTION FOR EXCITED UTTERANCES.
Mr. Lawrence asserts that the testimonies of Kelly Bare, Selina's babysitter, and Kelly Bryant, Selina's mother, concerning Selina's statements to them about Mr. Lawrence's conduct toward her were hearsay and not within any recognized exception to the hearsay rule. He argues that Selina's statements were not an excited utterance due to the passage of time between the abuse and the statement, being further complicated by the uncertainty concerning when the abuse occurred. Moreover, Mr. Lawrence argues that the testimonies of Kelly Bare and Kelly Bryant prejudiced him at trial. We disagree.
Our standard of review has been articulated by the Ohio Supreme Court:
 The standard for reviewing decisions of the trial judge on excited-utterance exceptions was set forth by Judge Taft in [Potter v. Baker (1955), 162 Ohio St. 488, 500]:
 "It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. * * * If his decision of those questions of fact, as reflected in his ruling on the admissibility of * * * [the] declaration, was a reasonable decision, an appellate court should not disturb it."
(Alterations original.) State v. Wallace (1988), 37 Ohio St.3d 87,90. An unreasonable decision is not a mere error of judgment, rather it is "perversity of will, passion, prejudice, partiality, or moral delinquency." See State ex rel. Shafer,159 Ohio St. at 590-91. Moreover, where the trial court has found that the declarations fulfill the requirements of admissibility for an excited utterance, "[o]ur task is to decide whether that was a reasonable determination." Wallace, 37 Ohio St.3d at 90.
An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). A four-part test has been established to determine the admissibility of excited utterances, allowing the admission of the statement where the trial judge reasonably finds:
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
(Emphasis sic.) State v. Taylor (1993), 66 Ohio St.3d 295, quoting Potter, 162 Ohio St. at paragraph two of the syllabus, approved and followed by State v. Duncan (1978), 53 Ohio St.2d 215, paragraph one of the syllabus. Moreover, "it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." Wallace,37 Ohio St. 3d at 90, quoting Duncan, 53 Ohio St.2d at 219-220.
Kelly Bare's and Kelly Bryant's recitation of Selina's statements to them was not improperly admitted by the trial court as it fell within the excited utterance exception to the hearsay rule. Mr. Lawrence does not contend that the startling event, the sexual abuse of Selina, did not occur. Moreover, Selina's statements concerned the traumatizing event. Furthermore, there was no dispute as to her ability to observe her tormenter. Mr. Lawrence questions the trial court's determination that Selina was under the continuing influence of the sexual abuse at the time when she made her statements.
Such trauma, however, is not as fleeting as Mr. Lawrence contends. As we noted in State v. Gott (Dec. 22, 1993), Loraie App. No 93CA005560, unreported, at 4-5, "the trial court could reasonably find that trauma caused by the abuse continued until [the five year old victim] disclosed the details[.]" Moreover, at trial, Laura Artino, a licensed independent social worker, stated that after abuse a child would be "very anxious" and filled with "mixed emotion[s]." Furthermore, the statements Selina made to her babysitter and mother contained several indicia of reliability, as set forth in Gott, supra, at 4.[2] The statements are corroborated by other witnesses, physical evidence, and by statements, which Selina made later. Selina's tender age, three years old, at the time of the abuse, also tends to evidence continuing trauma on her part. Hence, we conclude that the trial court did not act unreasonably in holding that Selina was still under the trauma of the event when she made the statements at issue to her mother and babysitter and in concluding that the statements fell within the excited utterance exception to the hearsay rule.[3] Mr. Lawrence's fifth assignment of error is overruled.
 D.
Third Assignment of Error
 SIDNEY LAWRENCE'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.
 CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, WAS DENIED WHEN THE TRIAL COURT DENIED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL ON EVIDENCE WHICH WAS INSUFFICIENT AS A MATTER OF LAW.
Mr. Lawrence asserts that, because the state did not establish the exact date of the abuse or that Mr. Lawrence was the only person who had the opportunity to abuse Selina, the state failed to meet its burden of proof at trial. Mr. Lawrence argues that the state's evidence was insufficient. We disagree.
 Our inquiry on appeal is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 To be convicted of rape, in violation of R.C. 2907.02(A)(1)(b), the state must prove, beyond a reasonable doubt, that the defendant engaged in sexual conduct with another person not his or her spouse while the other person was less than thirteen years old, whether the defendant knew the other party's age or not. To convict a defendant of gross sexual imposition, in violation of R.C. 2907.05(A)(4), the state must prove, beyond a reasonable doubt, that the defendant had sexual contact with another party who was less than thirteen, whether the defendant knew the other party's age or not.
The state's evidence, viewed in a light most favorable to the prosecution, provides ample basis for concluding that all of the elements of rape and gross sexual imposition were met. Mr. Lawrence challenges the sufficiency of the state's case based on the state's lack of evidence as to the exact time of the crime. The exact time of the crime is not, however, an essential element of this crime, the state must merely provide evidence showing that Selina was less than thirteen at the time the crime was committed. Mr. Lawrence does not assert that the state failed to prove Selina was under the age of thirteen when the abuse occurred. Mr. Lawrence also argues that the state's case was insufficient because the state failed to show that he was the only person who could have abused Selina. There is, however, no requirement that the state prove that the defendant is the only possible perpetrator of the crime charged. Hence, after thoroughly reviewing the record, we conclude that the evidence adduced before the trial court was not insufficient, as a matter of law, to support a conviction of Mr. Lawrence. Mr. Lawrence's third assignment of error is overruled.
 E.
Fourth Assignment of Error
 THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.
 CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, WAS DENIED WHEN HE WAS CONVICTED OF AND SENTENCED FOR THE CRIMES OF RAPE AND GROSS SEXUAL IMPOSITION ON EVIDENCE WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Lawrence asserts that the jury clearly lost its way by convicting him, as, on the evidence adduced at trial, the trier of fact could not have rationally concluded that Mr. Lawrence was guilty. He contends that the jury's decision was against the manifest weight of the evidence, as the evidence was unclear as to whether Mr. Lawrence had "sexual contact" and had committed "sexual conduct" with Selina. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
To be convicted of rape one must have engaged in "sexual conduct with another." R.C. 2907.02(A)(1). Sexual conduct is defined as
 vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
R.C. 2907.01(A). Gross sexual imposition requires one to have "sexual contact with another." Sexual contact is defined as "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
Although the witnesses at trial were not unanimous in proclaiming Mr. Lawrence's guilt, the jury's finding was not against the manifest weight of the evidence. The jury had the opportunity to view the witnesses and adjudge their credibility; therefore, their judgments must be given deference. Selina testified that Mr. Lawrence had made her touch his genitals and had fondled her genitals. When asked whether "when you were playing the game, did your dad's privates touch your privates?" Selina responded "Yeah." We conclude that this testimony, coupled with the copious amount of other evidence indicative of guilt present in the record, was not so outweighed by evidence to the contrary so as to make the jury's decision a miscarriage of justice. After thoroughly reviewing the record, we conclude that the jury's decision was not against the manifest weight of the evidence.
 III.
All of Mr. Lawrence's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER FOR THE COURT CARR, P.J.
WHITMORE, J. CONCUR
[1] It has long been acknowledged that it is within the province of the attorney to decide matters of trial procedure. "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has — and must have — full authority to manage the conduct of the trial." (Footnote omitted.) Taylor v. Illinois (1988), 484 U.S. 400, 417-18, 98 L.Ed.2d 798, 816. Furthermore,
 [a]s to incidental matters pending the trial, not affecting the merits of the cause, or working substantial prejudice to the rights of the client, such as forcing the opposite lawyer to trial when he is under affliction or bereavement; forcing the trial on a particular day to the injury of the opposite lawyer when no harm will result from a trial at a different time; agreeing to an extension of time for signing a bill of exceptions, cross interrogatories and the like, the lawyer must be allowed to judge. In such matters no client has a right to demand that his counsel shall be illiberal, or that he do anything therein repugnant to his own sense of honor and propriety. ABA Canon of
Professional Ethics, Canon 24 (1908).
[2] The "[i]ndicia of reliability include factors such as `the child's age, the type of assault and the circumstances of the declaration.'" Gott, supra, at 4, quoting State v. Woodson (Feb. 19, 1992), Lorain App. Nos. 5120/5121, unreported.
[3] Although Mr. Lawrence contends that he has been prejudiced by the admission of the testimonies of Kelly Bare, Selina's babysitter, and Kelly Bryant, Selina's mother, he does not challenge the statement that Laura Artino made at trial, reciting Selina's statement to her, which was virtually identical to the challenged statements. Hence, in any event, the statements of Selina's babysitter and mother were merely cumulative.